UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CR-20349-SCOLA

UNITED STATES OF AMERICA   :
          Plaintiff           :

vs.               :

YVES RICHARD LARRIEUX,
                   :
          Defendant.
_____ /

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Yves Richard Larrieux ("Larrieux"), will be before this Honorable Court on September 14, 2022, having pled to possession of ammunition. Larrieux submits this memorandum to aid the Court in determining an appropriate sentence.

## I. INTRODUCTION

1.      This case arises from Larrieux packing seven (7) boxes of 9mm ammunition in his checked luggage. The boxes were securely packed in the original manufacturers' packaging and contained a total of 350 rounds which weighed 4.04 kilograms. The method, manner and amount of ammunition Larrieux packed into his checked bag complied with TSA and American Airlines advisory regarding traveling with ammunition. The boxes were not concealed or contained within a secret compartment, but were merely packaged amongst Larrieux's clothing. Larrieux readily identified his checked bag to the customs and border patrol officers and he admitted to packing the ammunition in his bag. As a result, the

luggage and ammunition were seized for failure to declare, and Larrieux was arrested for possession of ammunition.

2.  At his arraignment, Larrieux entered a plea to the one count Indictment charging him with possession of the ammunition by an Alien, in violation of 18 U.S.C. § 922(g)(5)(b). The statutory maximum term of imprisonment is 15 years. The undersigned calculated a guideline imprisonment range of 18 to 24 months, as Larrieux has no criminal history and his calculated total offense level is 15. No downward departure has been offered, and it is presumed the Government will recommend a bottom of the guideline sentence. We believe a departure is warranted as the guidelines over criminalize Larrieux's conduct.

3.  While Larrieux's conduct may establish his crime of possessing ammunition, this case presents facts that are more nuanced and distinctive than the typical possession of ammunition by a prohibited person. Before this incident, Larrieux was a member of Nexus indoor shooting range of Fort Lauderdale. At Nexus, Larrieux purchased ammunition and engaged in sport shooting or target practice with various weapons. See **Exhibit A**. Larrieux also participated in sport or target shooting at other South Florida gun ranges. Prior to packing his luggage, Larrieux reviewed the TSA and American Airlines travel advisory regarding traveling with ammunition. See **Exhibit B**. He abided by the advisory regulations regarding method, manner and amount of ammunition allowed in checked luggage. Larrieux also immediately accepted responsibility for his transgression. Despite being advised to wait until a thorough investigation was completed and all potential defenses were discussed, Larrieux entered a plea to the criminal charge at arraignment.

4.      The guidelines which Probation must follow necessarily impose sanctions in the Modified

Sentencing Report which over criminalize Larrieux's conduct. Notably, Probation fails to

incorporate 2K2.1(b)(2), which would reduce Larrieux's guideline to a level 6, provided he

possessed the ammunition for a lawful sporting purpose.  Larrieux's Nexus membership

combined with the amount and type of ammunition and the location and circumstances of

his possession along with his intended use of the ammunition establishes his possession of

the ammunition solely for sport shooting / target practice. That said, because Probation must

follow the guidelines strictly (as opposed to this Court who may take them on an advisory

basis), even if the Modified Sentencing Report *had* incorporated this reduction, the

guidelines inexplicably require that Probation incorporate 2K2.1(b)(6)(A) in their

calculation, which wholly eliminates the benefit that the sporting provision is intended to

provide (reduction of the guidelines to a level 6) and instead mandates an increase to a level

18.

5.      Undersigned counsel respectfully requests this Honorable Court sentence Larrieux to a

sentence not including any additional term of incarceration.

II. SENTENCING SUBMISSION & REQUEST FOR ALTERNATIVE SENTENCE.

After *Booker*, 125 S. Ct. 738 (2005), district courts are now free from the mandatory nature

of the federal sentencing guidelines.  In addition, subsequent Supreme Court decisions have

emphasized that district courts are only required to give "some weight" to the advisory guidelines,

as courts are to the other 18 US § 3553 factors, and any attempt to give special weight to the

sentencing guidelines is contrary to *Booker*.  See *Gall v. United States*, 128 S. Ct. (2007);

*Kimbrough v. United States,* 128 S. Ct. 558 (2007); *United States v. McBride*, 511 F. 3d 1293 (11th Cir. 2007).

In fact, a sentencing court may not even presume that a sentence within the applicable guideline range is reasonable: "the Guidelines are not only not mandatory on sentencing courts, they are also not presumed to be reasonable." *Nelson v. United States*, 129 S. Ct. 890 (2009); *Rita v. United States*, 551 U.S. 338 (2007). The fundamental premise of the federal sentencing scheme is that "the court shall impose a sentence sufficient, but not greater than necessary," to comply with the purpose of 18 U.S.C. §3553. The Court, therefore, has considerable flexibility in determining the appropriate, "reasonable" sentence for the individual defendant.

Under 18 U.S.C. §3553, the Court is required, in relevant part, to consider the following factors in addition to the sentencing range established by the guidelines and pertinent policy statements: (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, the kinds of sentences available; and the need to avoid unwarranted sentencing disparities.

A.     *Nature and Circumstances of the Offense:*

On July 22, 2022, Larrieux and his girlfriend, Ms. Erthel Vincent, traveled to the U.S. for a vacation to celebrate his birthday. The couple flew from Miami to Las Vegas for a day, and then to Cancun, Mexico. On July 30th the couple returned to Miami on an American Airlines flight which arrived at approximately 8:55 pm. The following morning, Mr. Larrieux's flight to Port au Prince

departed Miami International Airport at 9:26 am.

Due to his late arrival back in Miami and his early flight to Haiti the following morning, Larrieux was unable to purchase ammunition on his own. He therefore, requested someone to purchase and deliver the ammunition to him. Prior to packing his luggage, Larrieux reviewed the TSA and American Airlines travel advisory regarding traveling with ammunition. In packing his luggage, Larrieux inappropriately believed he could legally possess and travel with ammunition. Notwithstanding, he abided by the advisory regulations regarding method, manner and amount of ammunition allowed in checked luggage. Larrieux packed seven (7) boxes of 9mm ammunition in his checked luggage. The boxes were securely packed in the original manufacturers' packaging and contained a total of 350 rounds which weighed 4.04 kilograms. The boxes were not concealed or contained within a secret compartment, but were merely packaged amongst Larrieux's clothing. When Larrieux delivered his checked bag to TSA he was only asked if the luggage contained food or currency.

Larrieux readily identified his checked bag to the customs and border patrol officers that questioned him on the jet way leading to the plane. Furthermore, when he was asked if he had ammunition in his checked bag, he admitted that he had packed ammunition in his bag. At the formal interrogation, Larrieux freely, voluntarily and willingly waived his Miranda rights. From the start of the investigation, Larrieux complied and cooperated with the agents during their investigation. He accessed his phone and allowed the agents to search his phone and read his texts. At no point did Larrieux attempt to deny or conceal the ammunition in his checked luggage.

Larrieux committed this offense over a very short period of time. It was committed in a

crude and unsophisticated matter.  Larrieux committed no act consistent with an attempt to deceive anyone or conceal the contents of his checked luggage.  Larrieux's forthright behavior buttresses his misplaced belief that he could travel with the ammunition in his checked bag.

B.      *History and Characteristics of Defendant*:

Larrieux is a 31 year old business owner and artist that was born and raised in Port au Prince, Haiti.  He has resided his entire life with his parents, Yves Joseph and Leslie Larrieux.  Mr. Larrieux is also the sole custodial parent of his 9 year old son.  He has no previous contacts with the criminal justice system.  For the past year he has been self-employed at a sports lounge (Nabob LLC) which he operates along with two other partners.  Mr. Larrieux registered Nabob on the Florida Division of Corporations and he serves as it the registered agent.

The numerous character letters describe Larrieux as a friendly, honest, kind, warm, caring and a family man.  See **Exhibit C**.  The letters also describe him as selfless and charitable.  The veracity of these character letters is born out by Larrieux's actions in this case.  Larrieux confessed his acts to the agents, he executed a factual proffer wherein he admitted and accepted the charged offense.  He immediately accepted responsibility for his actions by entering a plea at arraignment. He has accepted responsibility and is prepared to be sentenced.

As evidenced by the statements of his family members, Larrieux has the love and support of his family and friends which will assist him in dealing with and overcoming the stigma of his arrest, plea, conviction and sentence.

C.      *Familial Support*:

Larrieux requests the Court consider the support of family and friends in considering a

downward departure. In *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008), the court affirmed a 91 - month variance from the guideline range based in part on the support that the defendant stood to receive from his family. In *Gall, v. United States*, 128 S.Ct. (2007), the court imposed a probationary sentence to a defendant facing 30-70 months after pleading guilty to a drug trafficking charge. The district court, took into account several factors- including age, voluntary withdrawal from the charged conspiracy, familial support, and apparent pre-indictment rehabilitation- eschewed hard time. *Id.* at 593. As evidenced by the statements of his family members Larrieux has the love and support of his family and friends which will assist him in dealing with and overcoming the stigma of his arrest, plea, conviction and sentence.

D.    *The Need for the Sentence Imposed*:

       The incarceration that Larrieux has served adequately reflects the seriousness of his offense, promotes respect for the law and provides adequate punishment for the offense he committed.

E.    *To Afford Adequate Deterrence to Criminal Conduct*:

       The arrest, plea, felony conviction, expulsion and banishment from the U.S. has and will continue to have a significant deterrent effect on the commission of this offense by others in Larrieux's community and sphere of family, friends and associates.

F.    *To Protect the Public from Further Crimes of the Defendant*:

       Larrieux purchased and possessed the ammunition with the purpose and intent for personal use in sport or target practice. He did not attempt to deliver the ammunition to prohibited persons, such as a fugitive from justice, convicted felon, mentally defective person, or a person subject to a DV injunction. The conviction Larrieux received by entering his plea will result his removal from

the United States. The conviction will unequivocally and permanently exclude Larrieux from ever owning or possessing a firearm or ammunition. Moreover, as in the case of general deterrence, the empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. See *National Institute of Corrections, Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe* (2016).

G.    *To Avoid Unwarranted Sentence Disparities*:

Despite an exhaustive search, the undersigned has been unable to find a judgment where a defendant was sentenced on a sole count of possession of ammunition by an Alien. The undersigned would therefore offer the following examples:

a.   In Orlando, Florida, Thomas Lou Lambert, a former licensed gun dealer, plead guilty to knowingly selling a gun to an ATF informant with 2 felony convictions. Lambert's license to sell firearms had previously been revoked. He was sentenced to 4 months home detention and 4 years probation. Case No.: 14-CR-00007-Orl-36 GJK.

b.   In Tampa, Florida, Juan Jose Madrid-Zuniga pled guilty to possession of a firearm by an illegal Alien and unlawfully entering the U.S. He was sentenced to Time Served. Case No.: 09-CR-540-T-30MAP.

c.   In Pensacola, Florida, Jose Luis Montes Martinez pled guilty to possession of a firearm by an illegal Alien. He was sentenced to 180 days. Case No.: 15cr21-001/MCR.

d.   In Tampa, Florida, Delfino Morgado-Carrizal pled guilty to possession of a firearm by an Alien and unlawfull presence in the U.S. He was sentenced to 366 days. Case No.: 13-CR-282-T-24MAP.

e.   In Pensacola, Florida, Jose Luis Vieyra Camarillo pled guilty to possession of a firearm by an illegal Alien and possession of a false security card. He was sentenced to 366 days. Case No.: 07cr145-006/MCR.

f.   In Pensacola, Florida, Luis Alonso Decarca-Munguia pled guilty to possession of a

DONET, MCMILLAN & TRONTZ, P.A., ATTORNEYS AT LAW
SUITE 406, CONTINENTAL PLAZA, 3250 MARY STREET, COCONUT GROVE, FLORIDA 33133-5232
•PHONE 305-444-0030• FAX 305-444-0039 • INTERNET WWW.DMT-LAW.COM

firearm by an illegal Alien, illegal re-reentry in the U.S. and possession with intent to distribute marijuana. He was sentenced to 15 months. Case No.: 11cr108-001/MCR.

### III. CONCLUSION

Based upon the facts and factors set forth above, Larrieux respectfully requests that this Court impose a sentence below the advisory guideline range.

Respectfully submitted,
Counsel for Yves Richard Larrieux


By: /s/ Larry T. McMillan
Larry T. McMillan, Esq.
Florida Bar No.: 998745

CERTIFICATE OF SERVICE
On 09/12/2022, I filed the foregoing document, and served counsel of record, via CM/ECF.

By: /s/ Larry T. McMillan
Larry T. McMillan, Esq.
Florida Bar No.: 998745
3250 Mary Street, Suite 406
Coconut Grove, Florida 33133
Phone:    (305) 444-0030
Fax No.:  (305) 444-0039
Email: mcmillan@dmtlaw.com
Paralegals@dmtlaw.com

# Exhibit A



**From:** system@nexusshooting.systems
**Date:** 13 August 2022 at 5:45:19 PM GMT-4
**To:** erthelvincent@gmail.com
**Subject: Nexus Shooting receipt - Thank you for your order!**

## NEXUS SHOOTING
www.nexusshooting.com

Order #1000000749944
08/11/2021 07:21 PM
YVES LARRIEUX
Nexus Shooting - Davie, FL
Employee: Jessica Kaelin

### Range Use

| | |
|---|---|
| C9 - Position:1<br>YVES LARRIEUX<br>Type: Nexus 7yd<br>start time: 08/11/2021 07:45 PM<br>stop time: 08/11/2021 08:35 PM<br>tax: 0.00% | $25.00 |
| C8 - Position:2<br>ERTHEL VINCENT<br>Type: Nexus 7yd<br>start time: 08/11/2021 07:45 PM<br>stop time: 08/11/2021 08:35 PM<br>tax: 0.00% | $25.00 |
| G30 - Position:1<br>ERTHEL VINCENT<br>Type: Paper 25yd<br>start time: 08/11/2021 08:47 PM<br>stop time: 08/11/2021 09:22 PM<br>tax: 0.00% | $17.99 |
| G29 - Position:1<br>YVES LARRIEUX<br>Type: Paper 25yd<br>start time: 08/11/2021 08:47 PM<br>stop time: 08/11/2021 09:22 PM<br>tax: 0.00% | $17.99 |

### Firearm Rentals

Glock G19 Gen 4 MOS
9 mm Luger                                                          $15.00
rental time:
08/11/2021 07:34 PM
return time:
08/11/2021 09:22 PM

Glock G17 Gen 5
9 mm Luger                                                          $7.00
rental time:
08/11/2021 07:34 PM
return time:
08/11/2021 08:39 PM

Glock G48 Two Tone
9 mm Luger                                                          $7.00
rental time:
08/11/2021 07:35 PM
return time:
08/11/2021 08:39 PM

FN FNX-9
9 mm Luger                                                          $7.00
rental time:
08/11/2021 07:36 PM
return time:
08/11/2021 08:40 PM

FN Scar 16S
5.56x45 mm                                                         $25.00
rental time:
08/11/2021 08:40 PM
return time:
08/11/2021 09:23 PM

Bushmaster MOE Black M4 A3
5.56x45 mm                                                         $25.00
rental time:
08/11/2021 08:41 PM
return time:
08/11/2021 09:22 PM

---

Non-Firearms

---

Qty: 2                                                             $7.98

3

Nexus Shooting
Eye Protection Standard
NP100001

Qty: 1                                                          $0.99
Nexus Shooting
Ear Plugs
NP100003

Qty: 2                                                          $19.98
Nexus Shooting
Nexus Shooting Earmuffs
NP100417

Qty: 10                                                         $389.90
Geco
9mm 124gr FMJ
4000294186295

Qty: 2                                                          $39.98
Federal
XM193 5.56 M193 ball FMJ
029465063917

Qty: 2                                                          $33.98
PMC
Bronze .223 Rem 55gr FMJ
741569060080

Qty: 4                                                          $7.96
Law Enforcement Targets
B21e Blue Targets
NP100005

Qty: 2                                                          $5.98
Law Enforcement Targets
Baseball Bat Clown Target
NP100393

Subtotal: $678.73
Sales Tax: $41.49
Total: $720.22

4

| | |
|---|---|
| Payments | |

Date/Time: 08/11/2021 09:23 PM
Method: Credit Card                                          $720.22
Employee: Jessica
6491998745
complete
Charge authorization:

Cardholder Signature ____

                                                  Balance: $0.00


RETURN POLICY:
- All firearm and ammo sales are final and non-returnable.
- All tool sales are final and non-returnable.
- All general merchandise sales (with exception of those listed in the return policy) may be returned within 14 days of purchase if accompanied by sales receipt, all packaging, and is in resellable condition.
- All special orders are final, non-cancelable, non-refundable, and non-returnable.
- All body armor sales are final and non-returnable.
- All clearance item sales are final and non-returnable.
- Returns, cancelled orders, or restocked items are subject to a 15% restocking fee.


## CHECK THE STATUS OF YOUR FIREARM BACKGROUND CHECK

- Go to: **https://fes.fdle.state.fl.us/fes/status** and enter your Queue #


- Queue #: _____ .

# Exhibit B

# Transporting Firearms and Ammunition



Watch Video At: https://youtu.be/FpHGp9Z01f8

You may transport unloaded firearms in a locked hard-sided container as checked baggage only. Declare the firearm and/or ammunition to the airline when checking your bag at the ticket counter. The container must completely secure the firearm from being accessed. Locked cases that can be easily opened are not permitted. Be aware that the container the firearm was in when purchased may not adequately secure the firearm when it is transported in checked baggage.

Contact the TSA Contact Center with questions you have regarding TSA firearm regulations and for clarification on what you may or may not transport in your carry-on or checked baggage.

## Firearms

- When traveling, comply with the laws concerning possession of firearms as they vary by local, state and international governments.
- If you are traveling internationally with a firearm in checked baggage, please check the U.S. Customs and Border Protection website for information and requirements prior to travel.
- Declare each firearm each time you present it for transport as checked baggage. Ask your airline about limitations or fees that may apply.

as checked baggage only. As defined by 49 CFR 1540.5 a loaded firearm has a live round of ammunition, or any component thereof, in the chamber or cylinder or in a magazine inserted in the firearm. For civil enforcement purposes, TSA also considers a firearm to be loaded when both the firearm and ammunition are accessible to the passenger. For example, if an individual has a firearm in accessible baggage and ammunition in his/her pocket, or any combination where the individual has access to both, the firearm is considered "loaded" for purposes of assessing a civil penalty. Only the passenger should retain the key or combination to the lock unless TSA personnel request the key to open the firearm container to ensure compliance with TSA regulations. You may use any brand or type of lock to secure your firearm case, including TSA-recognized locks.

- Bringing  an unloaded firearm with accessible ammunition to the security checkpoint carries the same civil penalty/fine as bringing a loaded firearm to the checkpoint. You may find information on civil penalties at the Civil Enforcement page.
- Firearm parts, including magazines, clips, bolts and firing pins, are prohibited in carry-on baggage, but may be transported in checked baggage.
- Replica firearms, including firearm replicas that are toys, may be transported in checked baggage only.
- Rifle scopes are permitted in carry-on and checked baggage.

*United States Code, Title 18, Part 1, Chapter 44, firearm definitions includes: any weapon (including a starter gun) which will, or is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; and any destructive device. As defined by 49 CFR 1540.5 a loaded firearm has a live round of ammunition, or any component thereof, in the chamber or cylinder or in a magazine inserted in the firearm.*

## Ammunition

- Ammunition is prohibited in carry-on baggage, but may be transported in checked baggage.
- Firearm magazines and ammunition clips, whether loaded or empty, must be securely boxed or included within a hard-sided case containing an unloaded firearm. Read the requirements governing the transport of ammunition in checked baggage as defined by 49 CFR 175.10 (a)(8).
- Small arms ammunition (up to .75 caliber and shotgun shells of any gauge) must be packaged in a fiber (such as cardboard), wood, plastic, or metal box specifically designed to carry ammunition and declared to your airline.
- Ammunition may be transported in the same hard-sided, locked case as a firearm if it has been packed as described above. You cannot use firearm magazines or clips for packing ammunition unless they completely enclose the ammunition. Firearm magazines and ammunition clips, whether loaded or empty, must be boxed or included within a hard-sided, locked case.
- Please check with your airline for quantity limits for ammunition.

Read the guidelines for law enforcement officers flying armed

(6) Hazardous materials that are loaded and carried on or in cargo only aircraft, and that are to be dispensed or expended during flight for weather control, environmental restoration or protection, forest preservation and protection, firefighting and prevention, flood control, avalanche control, landslide clearance, or ice jam control purposes, when the following requirements are met:

    (i) Operations may not be conducted over densely populated areas, in a congested airway, or near any airport where carrier passenger operations are conducted.

    (ii) Each operator must prepare and keep current a manual containing operational guidelines and handling procedures, for the use and guidance of flight, maintenance, and ground personnel concerned in the dispensing or expending of hazardous materials. The manual must be approved by the FAA Principal Operations Inspector assigned to the operator.

    (iii) No person other than a required flight crewmember, FAA inspector, or person necessary for handling or dispensing the hazardous material may be carried on the aircraft.

    (iv) The operator of the aircraft must have advance permission from the owner of any airport to be used for the dispensing or expending operation.

    (v) When Division 1.1, 1.2, and 1.3 materials (except detonators and detonator assemblies) and detonators or detonator assemblies are carried for avalanche control, landslide clearance, or ice jam control flights, the explosives must be handled by, and at all times be under the control of, a qualified blaster. When required by a State or local authority, the blaster must be licensed and the State or local authority must be identified in writing to the FAA Principal Operations Inspector assigned to the operator.

[76 FR 3381, Jan. 19, 2011, as amended at 80 FR 1163, Jan. 8, 2015; 81 FR 35543, June 2, 2016; 87 FR 44997, July 26, 2022]

## § 175.10 Exceptions for passengers, crewmembers, and air operators.

(a) This subchapter does not apply to the following hazardous materials when carried by aircraft passengers or crewmembers provided the requirements of §§ 171.15 and 171.16 (see paragraph (c) of this section) and the requirements of this section are met:

  (1)

    (i) Non-radioactive medicinal and toilet articles for personal use (including aerosols) carried in carry-on and checked baggage. Release devices on aerosols must be protected by a cap or other suitable means to prevent inadvertent release;

    (ii) Other aerosols in Division 2.2 (nonflammable gas) with no subsidiary risk carried in carry-on or checked baggage. Release devices on aerosols must be protected by a cap or other suitable means to prevent inadvertent release;

    (iii) The aggregate quantity of these hazardous materials carried by each person may not exceed 2 kg (70 ounces) by mass or 2 L (68 fluid ounces) by volume and the capacity of each container may not exceed 0.5 kg (18 ounces) by mass or 500 ml (17 fluid ounces) by volume; and

    (iv) The release of gas must not cause extreme annoyance or discomfort to crew members so as to prevent the correct performance of assigned duties.

  (2) One packet of safety matches or a lighter intended for use by an individual when carried on one's person or in carry-on baggage only. Lighter fuel, lighter refills, and lighters containing unabsorbed liquid fuel (other than liquefied gas) are not permitted on one's person or in carry-on or checked

baggage. For lighters powered by lithium batteries (*e.g.,* laser plasma lighters, tesla coil lighters, flux lighters, arc lighters and double arc lighters), each battery must be of a type which meets the requirements of each test in the UN Manual of Tests and Criteria, Part III, Subsection 38.3 (IBR, *see* § 171.7 of this subchapter). The lighters must be equipped with a safety cap or similar means of protection to prevent unintentional activation of the heating element while on board the aircraft. Recharging of the devices and/or the batteries on board the aircraft is not permitted. Each battery must not exceed the following:

   (i)  For lithium metal batteries, a lithium content of 2 grams; or

   (ii)  For lithium ion batteries, a Watt-hour (Wh) rating of 100 Wh.

(3)  Medical devices that contain radioactive materials (*e.g.,* cardiac pacemaker) implanted or externally fitted in humans or animals and radiopharmaceuticals that have been injected or ingested as the result of medical treatment.

(4)  Alcoholic beverages containing:

   (i)  Not more than 24% alcohol by volume; or

   (ii)  More than 24% and not more than 70% alcohol by volume when in unopened retail packagings not exceeding 5 liters (1.3 gallons) carried in carry-on or checked baggage, with a total net quantity per person of 5 liters (1.3) gallons for such beverages.

(5)  Perfumes and colognes purchased through duty-free sales and carried on one's person or in carry-on baggage.

(6)  Hair curlers (curling irons) containing a hydrocarbon gas such as butane, no more than one per person, in carry-on baggage only. The safety cover must be securely fitted over the heating element. Gas refills for such curlers are not permitted in carry-on or checked baggage.

(7)  A small medical or clinical mercury thermometer for personal use, when carried in a protective case in checked baggage.

(8)  Small arms ammunition for personal use carried by a crewmember or passenger in checked baggage only, if securely packed in boxes or other packagings specifically designed to carry small amounts of ammunition. Ammunition clips and magazines must also be securely boxed. This paragraph does not apply to persons traveling under the provisions of 49 CFR 1544.219.

(9)  One self-defense spray (see § 171.8 of this subchapter), not exceeding 118 mL (4 fluid ounces) by volume, that incorporates a positive means to prevent accidental discharge may be carried in checked baggage only.

(10)  Dry ice (carbon dioxide, solid), with the approval of the operator:

   (i)  Quantities may not exceed 2.5 kg (5.5 pounds) per person when used to pack perishables not subject to the HMR. The package must permit the release of carbon dioxide gas; and

   (ii)  When carried in checked baggage, each package is marked "DRY ICE" or "CARBON DIOXIDE, SOLID," and marked with the net weight of dry ice or an indication the net weight is 2.5 kg (5.5 pounds) or less.

(11)  No more than two self-inflating personal safety devices, intended to be worn by a person such as a life jacket or vest, fitted with no more than two small gas cartridges per device (containing no hazardous material other than a Division 2.2 gas) for inflation purposes plus no more than two spare

⌂ Home  ›  At the airport  ›  Bags  ›  Firearms and ammunition

# Firearms and ammunition

## Traveling with firearms and ammunition

Laws on the possession of firearms differ between states and countries. Please check the requirements of your destination before you travel. Contact Reservations for international travel requirements and if any portion of your trip is operated by another carrier.

Reservations and ticket changes »

## Requirements

Within the U.S., you can only travel with firearms and ammunition, including pellet and BB guns, in your checked bags if you're over 18 years old. You must check them with an agent at check-in and declare that you're traveling with firearms and ammunition.

Firearms must be:

- Unloaded
- In a locked hard-sided container where the firearm is totally inaccessible
- Rifle cases require locks on each end

Ammunition must be:

In the original packaging from the manufacturer or in packaging specifically designed to carry small amounts of ammunition (made of fiber, wood or metal), with a maximum of 11 pounds (5 kgs) per container or customer. Ammunition is not accepted loose or in magazines or clips.

Watch the TSA Traveling with Firearms video 🗗

## Allowance

There is no limit to the number of items you can carry in your rifle, shotgun or pistol case, but bag and oversize / overweight charges may apply.

Oversize and overweight bags »

## Restrictions

Loose ammunition, magazines or clips and firearms are not accepted when traveling to or from Port of Spain, Trinidad and Tobago (POS).

## Law enforcement officers flying armed

⌂ Home  >  At the airport  >  Bags  >  Restricted items

# Restricted items



Bags

Checked bag policy

Carry-on bags

Delayed or damaged bags

Track your bags

## What can you fly with?

To prevent inflight danger, many common items are restricted by the Transportation Security Administration (TSA) and Federal Aviation Administration (FAA). If you travel with objects on the TSA prohibited items or FAA Pack Safe Hazmat restrictions lists, they will be confiscated.*

TSA prohibited items ⧉

FAA Pack Safe Hazmat restrictions ⧉

*You will be in violation of U.S. Federal Law if you don't declare any dangerous items. This means you could face up to 5 years imprisonment and a fine of $250,000 (49 U.S.C 5124).

⌄ Alcoholic beverages over 70 percent by volume

⌄ Alcoholic beverages under 70 percent by volume

⌄ Animal products/products of animal origin (EU destinations only)

⌄ Batteries

⌄ Cutting instruments

⌄ Defense sprays

⌄ Drones

⌄ Dry ice

Electronic cigarettes (vapor / e-cigarettes)

Explosives

Firearms or ammunition

| Example | Allowed for travel? | Notes |
|---|---|---|
| ■ Handguns<br>■ Rifles<br>■ Shotguns<br>■ Ammunition | Checked bags - yes<br><br>Carry-on bag - no | You can travel with firearms in checked bags only if they are declared to an agent at check-in.<br><br>You can travel with up to 11lbs/5kg small arms ammunition for sporting purposes in your checked bags if it is:<br>■ Securely packed in the original manufacturers' packaging<br>■ Packaged in fiber, wood, metal or other packaging specifically designed to carry small amounts of ammunition<br><br>Firearms and ammunition » |

Flammable liquids or solids

Gasoline-powered tools

Household items

Hoverboards

Lighters and matches

Marijuana

Mobility devices

Personal care items

⊙ Pressurized containers / compressed gasses

⊙ Recreational / full-body PPE

⊙ Samsung Galaxy Note 7

⊙ Self-heating meals

⊙ Self-inflating life jackets

⊙ Scissors and tools

⊙ Smart bags

⊙ Stun guns / shocking devices

## You may also like...

Special items and sports equipment »

Oversize and overweight bags »

⊙ Back to top



An official website of the United States government
Here's how you know

Home » Travel » Security Screening » What Can I Bring?

## Travel

# What Can I Bring?

Planning ahead and packing properly can facilitate the screening process and ease your travel experience at the airport. Know what you can pack in your carry-on and checked baggage before arriving at the airport by reviewing the lists below. Even if an item is generally permitted, it may be subject to additional screening or not allowed through the checkpoint if it triggers an alarm during the screening process, appears to have been tampered with, or poses other security concerns. Read about civil penalties for prohibited items.

For items not listed here, simply snap a picture or send a question to AskTSA on Facebook Messenger or Twitter. We look forward to answering your questions, from 8 a.m. to 10 p.m. ET weekdays; 9 a.m. to 7 p.m. weekends/holidays.

*The final decision rests with the TSA officer on whether an item is allowed through the checkpoint.*

*Officers may ask you to power up your electronic device, including cell phones. Powerless devices will not be permitted onboard the aircraft. TSA does not read or copy information from your device.*

Search                     Search by A-Z

## Aerosol Insecticide

**Carry On Bags:**    No
**Checked Bags:**    Yes (Special Instructions)

Aerosol insecticides are not allowed in carry-on; however they are allowed in checked bags as long as they are not labeled as hazardous material (HAZMAT).

## Air Mattress with Built-in Pump

**Carry On Bags:**    Yes (Special Instructions)
**Checked Bags:**    Yes

Air mattresses with built-in pump are allowed in carry-on bags. Please check with your airline for any size or

## Airbrush Make-up Machine

**Carry On Bags:**    Yes (Special Instructions)

**Checked Bags:**     Yes (Special Instructions)

Devices containing lithium metal or lithium ion batteries should be carried in carry-on baggage.  Most other consumer devices containing batteries are allowed in carry-on and checked baggage.

For more information to portable electronic devices, see the FAA regulations.

## Alcoholic beverages

**Carry On Bags:**    Yes (Less than or equal to 3.4oz/100 ml allowed)

**Checked Bags:**     Yes

> Check with your airline before bringing any alcohol beverages on board. FAA regulations prohibit travelers from consuming alcohol on board an aircraft unless served by a flight attendant.  Additionally, Flight Attendants are not permitted to serve a passenger who is intoxicated.

Alcoholic beverages with more than 24% but not more than 70% alcohol are limited in checked bags to 5 liters (1.3 gallons) per passenger and must be in unopened retail packaging. Alcoholic beverages with 24% alcohol or less are not subject to limitations in checked bags.

Mini bottles of alcohol in carry-on must be able to comfortably fit into a single quart-sized bag.

For more information, see FAA regulation: 49 CFR 175.10(a)(4).

## Alcoholic beverages over 140 proof

**Carry On Bags:**    No

**Checked Bags:**     No

Alcoholic beverages with more than 70% alcohol (over 140 proof), including grain alcohol and 151 proof rum. For more information, see FAA regulation: 49 CFR 175.10(a)(4).

## Ammunition

**Carry On Bags:**    No

**Checked Bags:**     Yes (Special Instructions)

Check with your airline if ammunition is allowed in checked bags. Small arms ammunitions must be securely packed in fiber, wood or metal boxes or other packaging specifically designed to carry small amounts of ammunition. Ask the airline about limitations or fees. Read the guidelines for traveling with firearms.

When traveling, be sure to comply with the laws concerning possession of firearms as they vary by local, state and international government.

## Antlers

**Carry On Bags:**     Yes

**Checked Bags:**     Yes

You may transport this item in carry-on or checked bags. For items you wish to carry on, you should check with the airline to ensure that the item will fit in the overhead bin or underneath the seat of the airplane.

## Arc Lighters, Plasma Lighters, Electronic Lighters, E-Lighters

**Carry On Bags:**     Yes (Special Instructions)

**Checked Bags:**     No

Measures must be taken to prevent unintentional activation of the heating element while on board the aircraft. Examples of effective measures to prevent unintentional activation include, but are not limited to: removing the battery from the lighter; placing the lighter into a protective case; and/or using a protective cover, safety latch, or locking device on the lighter's activation button.

Each lithium ion battery must not exceed a Watt-hour (Wh) rating of 100 Wh; or for lithium metal batteries, a lithium content of 2 grams.

Recharging of the devices and/or the batteries on board the aircraft is not permitted.

See FAA regulations for more information.

## Artificial Skeleton Bones

**Carry On Bags:**     Yes

**Checked Bags:**     Yes

## Axes and Hatchets

**Carry On Bags:**     No

**Checked Bags:**     Yes

1   2   3   4   5   ...                                                    Next ›   Last »



## All Items



### Food



### Sharp Objects



### Flammables



### Household & Tools



## Sporting & Camping



### Firearms



### Medical



### Miscellaneous

A - Z Index

Federal Relay

Civil Enforcement

FOIA

Metrics

No FEAR

Privacy

Report Fraud, Waste & Abuse

Report Security Threat

USA.gov

## Sign Up for Email Updates

Subscribe

 

# Exhibit C

August 31, 2022


To Whom It May Concern,


We are writing this letter for our eldest son, Yves Richard Larrieux.  From the day he was born, we made it a priority to instill all of the morals and values that he would need to be a productive member of society. As a child he never gave us much trouble and treated others with respect. We made sure he had access to a good quality education and he successfully graduated from high school.

As he matured into an adult, Yves Richard has continued to live his life with the principles that we taught him. He is respectful to authority, and he is a man of integrity.  He has always done his best to help us financially while also taking care of his 9-year-old son, our grandson.

Yves Richard cares deeply about his son and his family. We have watched him raise his son the right way even when it is difficult.  He has never neglected his responsibilities as a father, from doing homework to extra-curricular activities. Already, his son is feeling the void as his father is a constant presence in his life.

We love Yves Richard unconditionally and will be with him through this trying period of his life. Thank you for your attention to this letter.


Sincerely,


Lesly Eugene Larrieux and Yves Joseph Larrieux

August 31, 2022


To whom it may concern,


My name is Erthel Vincent. I'm an account, a marketing consultant and a chef who owns a restaurant in Haiti. I am Yves Richard Larrieux's girlfriend. I've known him for over 10 years. However, we recently got into a relationship a year and a few months ago.

Yves Richard Larrieux is a hard worker, a great person and loves to help people. He loves giving back to his community, today if he was back home he would've been gathering people to go give out school supplies to the less fortunate in some parts of Port-au-Prince. He loves to sing and he would spend the whole day singing, I would make fun of him and tell him that he needs to stop. He loves to travel that's my travelling buddy, and when we go somewhere he always goes to google on his phone looking for places to go. What we can wear there, places to eat, clubs to attend, places where we can take pictures, he's a planner without him even knowing it. We always talk about where we are going next. France was our next destination in October. He loves going to the shooting range, he enjoys watching movies, like he would litteraly, make sure we watch something on Netflix every week. When I try to bail out of him he would make sure he complains for me to feel bad and do it. He loves going on dates, he loves learning about new things. He would sit in front of his laptop and work on perfecting excel spreadsheets for his business. I also forgot about the dancing. He's the worst dancer ever and he thinks he's the best at it and I look at him and laugh. He loves playing basketball ,He's always cracking jokes and when he comes into a room everybody is happy, he is the life of every party.

He is a loving father, he loves his son so much , picks him up from school every day, always have their game dates, always present for his volleyball games at school. He's just the best father a kid can ask for.

I believe that he would never do anything to cause harm to anyone or anything. I hope that this letter would show how much of a great person he is and that he deserves another chance at life.

Best regards,
Ethel Vincent

August 31, 2022


To Whom It May Concern,


I am writing this letter for my younger brother, Yves Richard Larrieux.  Our parents raised us both in Haiti and taught us the value of human decency and integrity. Yves Richard has never been one to do anything that would bring disappointment to our family. For as long as I have known him, his main goal in life is to be a positive reflection of our mother and father.

As his older brother, I have known him all his life, and I know that he has a good heart and a positive outlook on life. He is a very loyal and protective brother. Even though I am older than him, he has always looked out for me when we were children. He made sure that I was never bullied or taken advantage of, and I am thankful to have him as my brother.

Yves Richard is a loving father to my nephew, who he has been raising for the past nine years. He supports his son financially and emotionally, and it will be a huge loss if he is unable to continue doing so. He also dotes on my two children and is a strong presence in their lives.

I believe that Yves Richard has learned a valuable lesson that he will use in his daily life.  I love him and will continue to support him to move past this difficult time. Thank you for your consideration.


Sincerely,

Reginald Larrieux

August 19, 2022

To whom it may concern,

I, Jonas Pierre Paul, am an employee of Mr. Yves Richard Larrieux. He is an outstanding boss who is always ready to listen to his employees and to solve their problems. He is the friendly but strict type of employer who wants his work to be always impeccable.

He is someone who I considered not only as a friend but as a leader. I want express gratitude to him for all the opportunities that he has given me. Thank you for taking the time to read my letter.

Sincerely,

Jonas Pierre Paul

August 22, 2022

To whom it may concern,

I thank life for giving me the chance to know my dear brother Yves Richard Larrieux. He is a great man with a sense of responsibility, who loves others, who lives only for his son and his family. It is a pleasure for me to write this letter on his behalf.

He believes in the importance of family, and he likes to visit us on weekends to see his nephew to spend time with him. He is someone who is extremely kind, who does not like to see people suffer and is always ready to help others. He treats his employees like family.

Sincerely,

Marie Loune Dubuche

Port au Prince, Haiti

August 24, 2022

To whom it may concern,

I want Yves Richard Larrieux to know the magnitude of my love for him. From a young age, we have spent almost every day together. We had shared many good times, and he's a great person and friend.

He is a person who always stays true to himself. He never pretends to be someone he isn't and that's worth more than all the gold in the world. As a friend and partner, he likes to take charge of everything he that he undertakes. He is a very passionate and loyal person.

I could spend days writing to describe his kindness, but words would fail me. He is a brother to me, and I want him to know that I love him dearly.

Sincerely,

Jean-Marc Orelus

August 19, 2022

To whom it may concern,

It is an honor for me to write this letter for my employer, Mr. Yves Richard Larrieux.  I have worked for his as a waiter at his nightclub for over a year. He is someone who cares deeply about his employees.  He is responsible and likes things to always be perfect. He also puts an emphasis on punctuality and customer service.

I am grateful to him for giving me a chance at employment in a country where jobs are very rare. It is because of him that I am able to earn a respectable salary and take care of my family.

Thank you for taking the time to read this letter.

Sincerely,

Anderson Clergy

August 24, 2022

Dear Sir, Madam,

Yves Richard Larrieux is a friend that I met through my boyfriend that I had at the time. Since then, we have shared great moments in our lives together. He's a very sociable and friendly person, and that's the thing I like the most about him.

Coincidentally, we are from the same province in Haiti. Every year, he, my boyfriend and I used to go to Les Cayes to celebrate the patronal feast of the city that saw us born.

He is someone who, to my knowledge, does not behave in a violent manner. Richard is a sweetheart, he is a person who loves and cares a lot about his friends.

Sincerely,

Tachka Van Bokkelen

August 20, 2022

To whom it may concern,

I am writing this character affidavit on behalf of Yves Richard Larrieux.  We have been best friends since we were teenagers, and he is very important to my life.  I am blessed to know him, and I consider him to be my family. He is like a brother to me.

 I am the godfather of Yves Richard's nine year old son, which is an honor for me. He is a responsible, caring father and the main caregiver to his son, a feat which is not easy in a country like Haiti. Together, we have also become business partners and co-founders of a nightclub, which helps him to provide financially for his child.

Yves Richard's best qualities are his loyalty and dependability towards the people that he loves. He is always there for me when I need him. He strives to support his local community by hosting sports tournaments to bring people together in a positive way. He is not only an instrumental part to the life of his son and parents, but to all the people around him.

I want to tell Yves Richard that I love him very much. I hope that you take this letter into consideration as you make your decision.


Sincerely,

Gladimyr Docius